RECEIVED
IN LAKE CHARLES, LA.

DEC 14 2016

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| SHAWN MEADOWS | * CIVIL ACTION NO. 2:15 -CV-01747 |
| | * |
| v. | * |
| | * JUDGE MINALDI |
| LIBERTY LIFE ASSURANCE | * |
| COMPANY OF BOSTON | * |
| | * MAGISTRATE JUDGE KAY |
| | * |
| | * |

**********************************************************************

## MEMORANDUM RULING

Before the court is the petitioner Shawn Meadows' (Meadows) Memorandum (Rec. Doc. 19), the defendant Liberty Life Assurance Co. of Boston's (Liberty Life) Response (Rec. Doc. 24), Meadows's Reply (Rec. Doc. 25), a Supplemental Memorandum filed by Liberty Life (Rec. Doc. 28), and a Supplemental Memorandum filed by Meadows (Rec. Doc. 29). For the following reasons, Meadows's ERISA complaint will be **DISMISSED WITH PREJUDICE** and Liberty Life's counterclaim will be **DISMISSED WITH PREJUDICE**.

## FACTS & PROCEDURAL HISTORY

Prior to October 11, 2011, Meadows was a sales representative at Goodyear. Goodyear had contracted with Liberty Life for a Group Disability Income Policy which paid benefits to Goodyear employees who participated in the Long-Term Disability Plan. Meadows participated in the Long-Term Disability Plan. In October 2011, Meadows was placed on sick leave because he was experiencing dizziness, light-headedness, and loss of consciousness. These symptoms kept him from driving which was an essential part of his sales manager job. Early in 2012, he was evaluated by Dr. Best, a neurologist, and diagnosed with neurocardiogenic syncope.

On October 3, 2012, after reviewing Meadows's medical history, Liberty Life began to pay Meadows long-term disability benefits under the policy. For the first 12 months, Meadows

1

qualified for these benefits because his condition prevented him performing the duties of his own occupation. However, under the policy, after the initial 12 months, Meadows could only receive long-term disability benefits if his condition prevented him from performing the duties of *any* occupation.

On September 26, 2013, Liberty Life determined that Meadows was not eligible for long-term disability benefits because he was able to perform the duties of three sedentary occupations: inside sales, internet sales, and department manager.[1] Liberty Life based its conclusion on a note from Meadows's treating physician Dr. Best, the report of a board certified neurologist Dr. Witham-Leitch, and a report from a vocational rehabilitation case manager. During the initial review, the note from Dr. Best stated that Meadows should refrain from driving, working at heights, and lifting heavy objects. Dr. Witham-Leitch came to the same conclusions, and the vocational rehabilitation case manager used these restrictions along with Meadows's work history, skills, and capacity to determine that he could do the work of certain sedentary occupations.

Meadows appealed the decision. On June 23, 2014, Liberty Life affirmed the findings of the disability case manager and found that Meadows was able to perform the duties of sedentary occupations.[2] The appeals panel came to this conclusion after reviewing a more recent note from Dr. Best; the report of a board certified cardiologist, Dr. Yamamoto; the report of a board certified neurologist, Dr. Shipkin; the report of a vocational consultant; other materials submitted by Meadows; and the materials from the initial denial. The more recent note from Dr. Best recommended more restrictions on Meadows's activity, including sitting with his legs elevated. Dr. Shipkin concurred with Dr. Best's conclusions. However, Dr. Yamamoto after reviewing

---

[1] Initial Determination (Rec. Doc. 16-2), pp.228-31.
[2] Appeal Determination (Rec. Doc. 16-2), pp. 76-90.

Meadows's medical file and conferring with Dr. Best concluded that Meadows would still be able to sit and perform sedentary tasks. The vocational consultant used the restrictions noted by Dr. Yamamoto to conclude that Meadows could perform the duties of sedentary occupations.

While Meadows was appealing Liberty Life's denial of his long-term disability benefits, and at the urging of Liberty Life,[3] he applied to the Social Security Administration (SSA) for Social Security Disability Income (SSDI) benefits. On May 22, 2014, the SSA approved Meadows application and found that he was disabled from all occupations based on Dr. Best's conclusions.[4] Liberty Life was not immediately notified of the SSA's decision. In Liberty Life's decision denying Meadows's appeal, it notes that it was "aware that Mr. Meadows' claim for Social Security Disability Income benefits [was] being processed."[5] Liberty Life was not notified about the outcome of Meadows's SSDI application until April 6, 2015, at which time Meadows requested that Liberty Life reconsider its denial.[6] Liberty Life denied the request noting the time period between its decision and when Meadows notified them of the SSA's decision.[7]

Liberty Life also demanded that Meadows provide documentation of any SSDI benefits received and that he reimburse Liberty Life for any received retroactive SSDI benefits.[8] Under Liberty Life's policy, any retroactive SSDI benefits would offset the long-term disability benefits that he had received under Liberty Life's policy, and Meadows would have to reimburse Liberty Life for any overpayment of funds. Meadows did not provide any documentation of SSDI benefits that he received, and he contends that he does not have any retroactive SSDI benefits in his possession. Liberty Life estimates, based on its own calculations, that Meadows received

---

[3] 11/14/2012 Liberty Life Letter (Rec.Doc. 16-2), pp. 348-49.
[4] SSA Decision (Rec. Doc. 16-2), pp. 60-67.
[5] Appeal Determination (Rec. Doc. 16-2), p. 90.
[6] 4/6/2015 Letter from Meadows's Counsel (Rec. Doc. 16-2), p. 59.
[7] 6/17/2015 Liberty Life Letter (Rec. Doc. 16-2), pp. 44-45.
[8] 4/8/2015 Liberty Life Letter (Rec. Doc. 16-2), pp. 57-58.

$32,796 in retroactive SSDI benefits for the time period of October 2012 to October 2013, during which time he was also receiving long-term disability benefits from Liberty Life.[9]

On May 22, 2015, Meadows filed a complaint in this court appealing the denial of his disability benefits, arguing that Liberty Life did not base its denial of substantial evidence in violation of 29 U.S.C. § 1132 (a)(1)(B) and § 1133.[10] Liberty Life filed an answer and counterclaim under ERISA § 502(a)(3), alleging that Meadows owes it $32,796 for overpayment of funds.[11] In accordance with the ERISA Case Order,[12] the parties were to submit the administrative record relied on by Liberty Life and memoranda explaining their arguments. Meadows submitted his initial memorandum (Rec. Doc. 19) and a reply (Rec. Doc. 25). Liberty Life also submitted a memorandum (Rec. Doc. 24). After reviewing both parties memoranda, the court requested that they each submit supplemental memoranda regarding Liberty Life's counterclaim and the applicability of *Central State, Southeast & Southwest Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356 (5th Cir. 2014) (Rec. Doc. 27). Liberty Life and Meadows both submitted supplemental memoranda about the counterclaim. (Rec. Docs. 28, 29).

## LAW & ANALYSIS

### I.   Standard of Review

In accordance with the ERISA Case Order (Rec. Doc. 15), the court will review the record and determine the parties' claims based on the record. When a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the district court reviews the plan administrator's decision for an

---

[9] *See* (Rec. Doc. 16-2), pp. 48-55.
[10] Compl. (Rec. Doc. 1).
[11] Answer (Rec. Doc. 7).
[12] ERISA Case Order (Rec. Doc. 15).

4

abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). "This is the functional equivalent of arbitrary and capricious review." *Anderson v. Cytec Indus., Inc.,* 619 F.3d 505, 512 (5th Cir. 2010). "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.,* 168 F.3d 211, 215 (5th Cir. 1999) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 828-29 (5th Cir.1996)). The administrator cannot rest its decision on unsupported suspicions. *Anderson,* 619 F.3d at 512 (citing *Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 302 (5th Cir.1999)). Rather the "decision to deny benefits must be supported by substantial evidence. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). Additionally, the court may only review the administrator's decision based on the evidence available to the plan administrator.[13] *Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 394 (5th Cir. 2006) (citing *Vega,* 188 F.3d at 299).

When making its decision, the administrator is not obligated "to weigh treating physicians' opinions any differently than those of other doctors or specialists." *Killen v. Reliance Standard Life Ins. Co.,* 776 F.3d 303, 308 n.2 (5th Cir. 2015). Further, "courts [cannot] require administrators automatically to accord special weight to the opinions of a claimant's physician;

[13] The Fifth Circuit in *Vega* explained that subsequent SSA decisions regarding SSDI benefits may become part of the administrative record if they are submitted to the administrator before filing suit in district court, and the administrator has a fair opportunity to consider it. 188 F.3d at 300. Meadows does not argue that the Social Security Administration decision finding him completely disabled should have been considered by Liberty Life in his memoranda. When determining whether Liberty Life acted arbitrarily, the court will not consider the SSA decision as part of the record available to the plan administrator because the decision was disclosed to Liberty Life almost 11 months after the SSA determined eligibility and almost 10 months after Liberty Life denied Meadows's claim. Furthermore, Liberty Life was not given a fair opportunity to consider it because Meadows filed a complaint in federal court a month and half after notifying Liberty Life about the SSA decision and did not wait for Liberty Life's response to his request to reconsider his claim which was sent less than 4 weeks after Meadows filed suit. Had the SSA decision been disclosed to Liberty Life in a manner that gave it a fair opportunity to consider it, Liberty Life's determination would have been an abuse of discretion unless it addressed the SSA decision. *See Schexnayder v. Hartford Life & Acc. Ins. Co.,* 600 F.3d 465, 471 (5th Cir. 2010).

nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). "Ultimately, [a court's] review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Anderson*, 619 F.3d at 512 (quoting *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)).

Here, Liberty Life based its denial of long-term disability benefits on the medical opinion of cardiologist Dr. Yamamoto,[14] the medical opinion of neurologist Dr. Shipkin,[15] the treatment and opinions of treating neurologist Dr. Best,[16] the opinion of a rehabilitation consultant,[17] the opinion of neurologist Dr. Withiam-Leitch,[18] and the transferable skills analysis/vocation review.[19] After reviewing Meadows medical records and speaking with his treating physician, Dr. Yamamoto concluded that Meadows would be best treated by a cardiologist and he could perform sedentary work.[20] Using sedentary work restrictions and Meadows's work history, education, skills, and capacity, the vocational consultant found that Meadows could perform different occupations.[21] Based on these recommendations, Liberty Life did not arbitrarily or capriciously determine that Meadows was able to perform the duties of an occupation.

Meadows argues these opinions are not substantial evidence, and that the appeals panel should have relied on the opinion of the treating physician, Dr. Best. Dr. Best concluded that Meadows condition limited him to two hours of walking and standing in an eight hour period,

---

[14] Opinions of Dr. Yamamoto (Rec. Doc. 16-2), pp. 92-93, 121-24.
[15] Opinions of Dr. Shipkin (Rec. Doc. 16-2), pp. 126-32
[16] Opinions of Dr. Best (Rec. Doc. 16-2), pp. 208-12, 263, 276-78
[17] Opinions of Vasquez (Rec. Doc. 16-2), pp. 213-14.
[18] Opinions of Dr. Withiam-Leitch (Rec. Doc. 16-2), pp. 255-59
[19] Transferable Skills Analysis/Vocational Review (Rec. Doc. 16-2), pp. 249-51.
[20] (Rec. Doc. 16-2), pp. 92, 122, 124.
[21] Transferable Skills Analysis/Vocational Review (Rec. Doc. 16-2), pp. 249-51.

sitting with his legs elevated to chest height, carrying up to 10 pounds, and refraining from driving and being in high places that required balance.[22] However, Liberty Life is not required to give Dr. Best's opinion more weight. *See Killen*, 776 F.3d at 308 n.2. Crediting Dr. Yamamoto's opinion is rational in light of the evidence, especially considering that both Dr. Shipkin and Dr. Yamamoto determined that Meadows's condition would be best treated by a cardiologist. Dr. Yamamoto is a cardiologist, and Dr. Best is a neurologist. Therefore, Liberty Life's decision is based on substantial evidence and is not arbitrary and capricious.

## II.    Conflicts of Interest

In addition to considering the evidence on which the administrator's decision was based, to determine if the administrator abused its discretion, the court also must consider whether the administrator has a conflict of interest. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247-48 (5th Cir. 2009) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)). A conflict of interest exists when the administrator of the plan is also the insurer of the plan. *See Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 278 (5th Cir. 2004). If the "administrator has a history of biased claims administration," an abuse of discretion is more likely, but if "the administrator has taken active steps to reduce potential bias and to promote accuracy," an abuse of discretion is less likely. *Holland*, 576 F.3d at 248-49 (quoting *Glenn*, 554 U.S.at 117). For example, if the administrator "wall[s] off claim administration from those interested in firm finances" or "impos[es] management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits," the conflict of interest is less important, "perhaps to the vanishing point," in determining whether the administrator abused its discretion. *Id.* (quoting *Glenn*, 554 U.S.at 117).

---

[22] Opinions of Dr. Best (Rec. Doc. 16-2), pp. 211-12.

Here, Liberty Life both administered and insured the plan, giving it a conflict of interest. *See Ellis*, 394 F.3d at 278. However, the court finds that the conflict of interest is of minimal importance. Meadows did not identify any history of biased claims administration, and Liberty Life has provided evidence of active measures that it takes to reduce bias and promote accuracy.[23] Those measures include separating the disability claims department and the underwriting department by physical location and managerial structure, and implementing management checks to identify inaccurate decisionmaking.[24] Meadows argues that the court cannot consider this evidence because it was not part of the administrative record. However, the court will consider the evidence because a conflict of interest and active measures taken to reduce the potential for bias are part of the court's abuse of discretion determination, but they are not necessarily part of the administrator's claim decision. *See Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). Based on the lack of evidence provided by Meadows and the evidence provided by Liberty Life, the court gives the conflict of interest minimal importance in determining whether Liberty Life abused its discretion.

Therefore, the crux of whether Liberty Life abused its discretion is whether its decision to deny long-term disability benefits was reasonable and based on substantial evidence. As previously discussed, Liberty Life's denial was not arbitrary and capricious. Accordingly, Liberty Life's denial of long-term disability benefits was not an abuse of discretion, and Meadows's complaint will be **DISMISSED WITH PREJUDICE**.

### III.   Liberty Life's Overpayment of Benefits Counterclaim

Liberty Life also seeks compensation for an overpayment of benefits. Liberty Life argues that because the SSA determined that Meadows was permanently disabled, Meadows received

---

[23] Affidavit of Berry (Rec. Doc. 24-1).
[24] Affidavit of Berry (Rec. Doc. 24-1), para. 8, 9.

retroactive SSDI benefits. Under Liberty Life's disability plan, any SSDI benefits must be used to offset any disability benefits paid by Liberty Life, and therefore, Meadows must reimburse Liberty Life for its overpayment of long-term disability benefits.[25]

Under ERISA § 502(a)(3), a fiduciary can bring a civil action for *equitable* relief. "Equitable relief is contrasted with 'legal relief,' which constitutes claims seeking 'nothing other than compensatory damages.'" *Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th Cir. 2014) (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993)). Whether a claim for monetary compensation is "legal or equitable depends on (1) 'the basis for the [fiduciary's] claim' and (2) 'the nature of the underlying remedies sought.'" *Id.* at 362 (citing *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)).

First, regarding the basis of the claim, "the 'familiar rule of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing,' applies, and therefore, "the beneficiary's promise under his ERISA plan to reimburse the fiduciary 'impose[s] on that portion [of the SSDI benefits] a constructive trust or equitable lien,' allowing [the fiduciary] to follow a portion of the recovery into the beneficiary's hands." *Id.* at 362-63 (citing *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363-64 (2006)). Thus, the basis of the fiduciary's claim would be equitable. Second, regarding the nature of the remedy sought, an equitable remedy generally does not include compelling the payment of money due under a contract. *Id.* at 362. However, if the "money or property identified as belonging in good conscience to the [fiduciary] could clearly be traced to particular funds or property in the [beneficiary's] possession," the monetary remedy could be considered equitable. *Id.* (quoting *Great-W. Life*, 534 U.S. at 213).

---

[25] Liberty Life's Supplemental Memo. (Rec. Doc. 28), pp. 1-2.

Here, Liberty Life's plan establishes an equitable basis for relief based on Meadows's promise to reimburse Liberty Life for overpayment of funds. *See id.* at 362-63 (citing *Sereboff*, 547 U.S. at 363-64). However, Liberty Life has provided no proof that Meadows actually received retroactive SSDI benefits, and therefore it has not identified money "traced to particular funds or property in [Meadows's] possession." *See id.* (quoting *Great-W. Life*, 534 U.S. at 213). This court cannot rely on Liberty Life's estimation of what it believes that Meadows should have received as retroactive SSDI benefits. Furthermore, Meadows denies that he is in possession of such funds.[26] Therefore, the court does not find that Liberty Life's claim for overpayment of benefits is equitable. Because the claim is not equitable, it cannot be brought under ERISA § 502(a)(3), and the court will **DISMISS WITH PREJUDICE** Liberty Life's counterclaim.

## CONCLUSION

Because Liberty Life's decision to deny long-term disability benefits was reasonable and based on substantial evidence, it did not abuse its discretion. Therefore, the court will **DISMISS WITH PREJUDICE** Meadows's complaint.  However, because Liberty Life has not identified monetary funds or property in Meadows's possession, it has not stated an equitable claim for relief for its counterclaim. Therefore, the court will **DISMISS WITH PREJUDICE** Liberty Life's counterclaim for overpayment of funds.

Lake Charles, Louisiana, this 5 day of _____, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[26] Meadows Supplemental Memo. (Rec. Doc. 29), p. 6.